13-1049 LEE v. MIKE'S NOVELTIES This is a patent case where there is no substantial evidence of infringement, but there is clear and convincing evidence that the patent at issue is invalid. Mr. Tran, at page 34 of the opening brief, Mike's Novelties argues that Mr. Lee, quote, refused to comply with Local Rule 3-6. Where in the record does it say that he refused to comply as opposed to saying it doesn't govern? The issue was brought to the attention of Lee's counsel when the emails came through and it was pointed out to them that the local rules require the amendment of the infringement contentions and knowing that they still didn't do it. So show me in the record where it says, we refuse to comply. It's not on the record, Your Honor. What is indicative of that is that when the issue was brought forth before the district court, the district court asked Lee's counsel, you were aware that you were supposed to amend, why didn't you amend? There was no response given to that question. In its opening brief at page 10, Mike's Novelties says that the damage done by what you characterize as Judge Cronstadt's erroneous jury instruction was, quote, incurable in spite of the later curative instruction. Where is the motion for a new trial on this basis? There was no motion for a new trial on that basis. We objected to the jury instruction. The jury instruction was amended, but upon amending the jury instruction, the district court judge instructed us not to bring up any arguments or evidence related to the Spring Holding Deterrents Station Act. Was an objection made on the record to the new instruction? There was no objection made to the new instruction. It was satisfactory to us, except for the fact that district court judge instructed us, he ordered us not to bring, even though the instruction was amended to be more consistent with Judge Fairbank's claim construction order, he still instructed us not to bring up any arguments related to the idea that the Spring Holds Deterrents Station Act. And there was no motion for a new trial? There was no motion for a new trial. So, Your Honor, one of the things that I want to bring up here is that Judge Fairbank made a statement. What you just said seems to be a claim construction argument, which you didn't preserve by objecting to the instruction. What you're saying is if we don't take advantage of the novel feature of the invention here, which is the relative weights of the turret and the manifold, if we hold these things together with the spring, we're not infringing. But it doesn't seem to me that that view of the scope of the claim was one that you asked for in the instruction. So, how is that before us? Well, what I asked for in the instruction was an instruction that indicated that the claim requirement should be read with the common meaning of the terms that are there, as Judge Fairbank indicated. The claim was very simple. It indicated that the turret has to remain stationary because it is heavier than the manifold. There was no language in the claim or in the patent related to the lack of a spring or any other mechanism. You're saying that in your device that it remains stationary because of the spring and not because of the weight of the turret. That is correct. In our device, the spring is what holds the turret stationary. It is not an additional feature because it eliminates the turret remaining stationary because of its weight. It is the spring and the spring alone that holds the turret stationary. But that's exactly the fact question that the jury was asked to figure out, which is does the turret, in your case, weigh enough? Is it heavy enough to hold it in place? So, they were asked to figure out whether or not it's heavy enough. And if it is, then that's the end of it. It was given the devices themselves to play with. Mr. Lee testified. I don't understand why you're here. What's the basis upon? Well, first, the jury was not given any evidence that the turret in the accused device is actually heavier than the manifold. Well, couldn't they determine that themselves? They had the pipes, right? They had the pipes, but they didn't have a scale to weigh them. The evidence should be put forth before the jury. Wait a minute. One of them was in fact weighed by Mr. Lee, and I understand it's the one that didn't contain the spring. But he then testified that they were the same, and the jury was given them. So, why isn't that cumulatively enough? Why did the jury have to perform an independent weighing? Well, I'm not contending that the jury should have independent weighing of the device. I think the evidence should have been presented with the jury. I think it was intentional that the turret in the device without the spring was weighed, and the turret with the device with the spring was not weighed. It was sort of an argument that was put forth for the jury saying, well, look, this one is heavier than the manifold, so you need to presume that this one is also heavier than the manifold. There was no substantial evidence to substantiate that assertion. You're saying it's a make-weight argument. Yes. So, that was one of the flaws. The other flaw, the other evidence that was not presented to the jury is that the turret remains stationary because it is heavier than the manifold. There was nothing presented to that effect. There was no expert testimony. There was no scientific analysis. It was simply testimony from the appellee. Why do you need scientific analysis? You're talking about a pipe, for goodness sakes. And the jury was given the pieces. They can just put the turret on top and say, oh, is it stationary or not stationary? This isn't rocket science. Why isn't that enough? Why do you need some expert? Do you really want to trot experts in these kinds of cases? I mean, think of how much that will cost your client. Well, the reason, Your Honor, is because the claim language was very specific. The turret has to remain stationary because it is heavier than the manifold. The jury was given the physical one with no spring, so they could themselves hold it in their hands and see if it remained stationary. Since there was no spring, there's no other thing that could have kept it stationary but for the heavier weight. Why isn't that enough substantial evidence for them to decide that that claim limitation is set? I think there are other reasons that could have held that that turret stationary. Okay, but isn't that your obligation to come forward with? And even if there were other reasons it could have, I'm reviewing a jury fact-finding not to determine whether I think it's correct but whether the record contains substantial evidence to support it. And the fact that they had the devices and could themselves determine it seems to me to be substantial evidence. Even if I think there's evidence on the other side, I still have to affirm. And that would only apply to the pipe without the spring, right? It wouldn't apply to the pipe with the spring. Were they not given both, just so I know? They were given both but in the pipe with the spring, there was the tension of the spring that was holding the turret stationary. Mr. Tern, was this your letter to which the court referred at 826, that begins over one year into this lawsuit? Yes, that is correct. And Judge Moore mentioned the question of attorney's fees. You say in here that you expect that your attorney's fees will exceed $320,000 to take this case to trial, and your client is in a hole that is getting deeper every day. The court found those statements were unsupported by the record. How were they supported by the record, given both the result and the record as it stood at that time? Well, at that time, the claim construction order that was issued by Judge Fairbank and her language, her statement, indicated that the issue is whether there's a genuine issue of material fact as to whether the turret remains stationary because it is heavier than the matter. That was the claim construction order, and appellants were ready to present evidence and arguments to that effect. But when we went to trial, the trial judge did not allow that evidence. His claim construction was, well, absent the spring and ball. Let's ignore the spring and ball. So take that out of the accused's device. Now, can the turret remain stationary because it is heavier than the matter? So he excluded the spring and ball. Are you completely ignoring the actual language of the patent? Well, the language of the patent does indicate that the turret has to remain stationary because it is heavier than the matter. That is the central issue in this case. And the theory is that because of the accused's device, it's held stationary because of the spring, and in your view, not because of the weight, it doesn't infringe. That is correct. Even if removing the spring would still allow it to be stationary because of the weight of the turret. Yes, because the way that the product was sold was with the spring, and there's a very specific reason for the presence of the spring. That just adds weight to the turret? No, it does not. The tension of the spring locks the turret in place. It prevents it from revolving, as I understand it, freely. That is correct. It prevents it from revolving freely because the patent itself indicates one of the claim requirements is that there has to be a non-binding relationship between the turret and the manifold so that the turret rotates readily. So how does that mean it holds it in place on the base? Well, the turret, according to the patent, the weight of the turret holds it in place. The spring holds the turret to the manifold because one end of the spring is on the turret and one end is on the manifold, and it compresses the two of them together. That is correct. So the spring is laying against the manifold inside a hole, and then when the turret is placed on top, it compresses the spring, so the tension, the frictional force there between the spring and the little ball and the turret holds it together. I guess here's what is bothering me about your argument. In my home, my front door, I like to keep people out, so I have a lock at the doorknob. I also have a deadbolt. Aren't they both operating to keep people out? And you're saying, well, the claim says the lock in the door has to keep people out, and here we've got a deadbolt that keeps people out. Well, the lock at the door is still doing it too, and I think that the reason you're struggling here is Mr. Lee put forth evidence that your heavier turret is holding it stationary. Now, you may disagree with that evidence, but it was presented to the jury, and you're saying, no, we've got a spring that's holding it stationary, and it's kind of like my example of the two locks on the door. Both of them are independently performing the function. How could you explain to me in a way that I can understand how I ought to throw out the jury verdict that the heavier turret is what's causing the stationary in your invention, I mean in your product? Okay, so first of all, the turret in that accused product with the spring was not shown to be heavier than the manifold. They never took out the spring and the bolt to show that it remained stationary. Did the jury have it in front of them? The jury did have it in front of them. But there was no evidence presented that that doesn't hold it in place. The device was accessible to the jury to literally hold in their hands, was it not? The device, they did have the device to hold it in their hands. Yes, they did. But the contention still is that the presence of the spring negates the presence that the turret stays stationary because of its heavier weight. But the question of actual physical weight was available to the jury to determine as a prior effect, wasn't it? The question of actual physical weight was not available to the jury. They had to make that determination on their own. That's my point. They had the evidence available to make that determination, did they not? Yes, they did have the parts available. I don't think they would have been able to make that determination without a scale. I don't believe a scale was available to the jury. But they did have the parts available. I'll save the rest of my time. We'll give you 10 minutes for a model. Mr. Handel? Thank you, General Hirsch. By the time of the Markman, it was apparent that the only defense we were going to face was going to be running the meter on the plaintiff. Wait a second. Why was it unreasonable for them to try to convince the jury that the turret was not held in place by the weight of the turret as compared to the manifold? Why was that unreasonable for them to argue that to the jury? They got evidence in. The question was asked by Mr. Turan as to whether... He was arguing that the turret only was doing... I'm sorry, the spring only was doing the job. And he asked the question of Mr. Lee. And Mr. Lee responded that the spring helped do that and that the weight helped do that. So that evidence is going to the jury. The claim says that the weight of the turret has to be sufficient in and of itself to provide the stability, right? The claim language goes to the relative weight. Answer my question. Is that not true? That's true. The weight was sufficient to maintain stability. So why was it unreasonable for him to argue to the jury that the weight wasn't sufficient to accomplish that? What the judge said was that he could not argue to the jury that... I'm trying to remember the language, Your Honor. It was only the spring, as I recall. Well, that's a different question. But why wasn't it reasonable for him to argue that the weight of the turret wasn't sufficient to hold it onto the manifold? He could argue the relative weight. He was never precluded from doing that. Okay. And that wasn't unreasonable to make that argument? He could argue that the weight of his turret was not sufficiently heavy enough to hold it in place without a spring. If he could make that argument, that would be a reasonable argument to make. I don't agree with what counsel would have him say. How can that argument then be objectively unreasonable since you just said it was reasonable? I believe he could make the argument. I believe the evidence would objectively discount the argument as being an unreasonable conclusion. You can ask a jury of reasonable men to come to a conclusion which is in your favor, although it's not reasonable. There's nothing wrong with making the argument, but that doesn't mean that the argument is for a reasonable conclusion or argues a reasonable conclusion. Well, if the jury had come out the other way, would there be substantial evidence to support its conclusion? It had the pipes. It might have reached a different conclusion adverse to you, right? The jury could have come to that conclusion. I don't believe that that conclusion would withstand the scrutiny of this court. Why? Because the pipes are in evidence and you can see exactly what his pipe does. You can see that it holds it in place just the same as ours does. Holding it in place is defined by the disclosure in the patent. The parts of his pipe and our pipe are completely identical. Our pipe was measured and that became the patent application. So, in a sense, the patent defines that two pipes having these parts with these dimensions and these materials, that holds it in place. That's one definition. That's what the patent is saying. If it's like this, it's holding it in place and the two pipes are identical, therefore, his pipe would have to meet the recitations as a claim. Without any assessment being made about the weight? I think the assessment would be made that the... You didn't weigh... Was the jury presented with any evidence as to either of the pipes as to the weight? Excuse me, Your Honor. Was the jury presented with evidence as to either one of the accused pipes as to what the weight of the turret was and whether it was sufficient to create stability? Yes, Your Honor. We weighed one of the pipes. We weighed the turret and we weighed the... One of whose pipes? One of the infringing pipes. The turret and the manifold were weighed. The difference was about 25-30%, as I recall. Where's that in the record? I don't have the exact citation. It's in the briefs, Your Honor. Mr. Lee, the patentee actually was the one who performed the weighing with the scale for the jury. Isn't that right? That's correct. It was read into the record. Then the patentee testified that the materials were the same, that they were brass and aluminum in both cases. And you could just look at them and they looked the same. The reason I'm asking that question about the record is because Mr. Tarrant just told us that the jury did not have the weight of the allegedly infringing pipe in front of it. Is that correct or not correct? That's correct. We did not weigh all the parts, but we gave them the parts. I understand, but I thought you just told Judge Moore. Aren't the facts that there are two different accused products, and Mr. Lee weighed one of them and its component parts for the jury, and then just said the other one is identical, but didn't separate the weights. Is that right? Counsel sitting at the table should not nod, please. You're supposed to just sit there. Is that right?  So there were two different products that were accused of infringement. One of them was weighed, and then he just said the other one is the same, and then both of them were given to the jury. That's correct, Your Honor. That's what I thought the facts were. They were disassembled to the jury. They can be pulled apart by hand. If the court would like to see the parts… I'd like to see them. Is that okay?  Okay, so there was testimony about the weight, but was there testimony that the weight was sufficient to create stability? The jury would have to take the finished pipes and just evaluate for stability. So the answer is there was no testimony that the weight differential created stability? We read the claim, element by element, and we did have testimony on that. Was there testimony that the weight… Mr. Lee gave testimony on that. Mr. Lee gave testimony that what? That the weights were sufficient to maintain it stable. Okay, where is that testimony in the record? The testimony is in the examination. Mr. Lee… No, no, where? What page? I don't have it identically. You're supposed to understand the record so that when you come to the argument you can help us by showing where it is. It isn't sufficient to say it's in there somewhere. I could supplement that information by letter, Your Honor. I guess what I'm trying to figure out is whether there was actual testimony that the difference in weight created the stability or whether the jury had to reach that decision on its own by examining the pipes. Yes, Your Honor, Mr. Lee gave that testimony. One of the points I think which is important here is that a lot of the arguments that have been made by opposing counsel have really ignored the meaning of the claims. For example, there is the argument that the ball and spring result in binding the turret to the manifold. In point of fact, if you look at the claim language, it says specifically that the bearing provides a non-binding mounting. And the bearing in his particular device does provide a non-binding mounting. And the indexing mechanism is really quite separate from what the bearing provides. So I think that's another point that got lost in all those motions. There's been so much repeated motions dealing with the same issue. We had three or four applications on the issue of the ball and spring avoiding infringement and making the weight limitation immaterial. We had three motions on the binding issue. We had three applications on non-enablement. We had three applications on failure of best mode. There's been no evidence on any of those points. And there's no completely speculative type attacks over and over again. Starting with losses at Markman, followed by repeated dispositive motions during the course of pre-trial motion practice, followed by post-trial motions, all on the same issue. We had, on top of that, threats to report my co-counsel and I to the New York and California FARC for speaking to third-party witnesses. It was absolutely proper behavior and so found by the court. There was this whole business about changing the infringement contention. And I apologize, I didn't see it as clearly as I do now. The court says in its decision that the threats were about speaking to defendant's customers. Those are the same as the third-party witnesses? Yes, Your Honor. That's who I'm referring to. Is there any record of what was said in the record? The court seems to simply say that it was right to interview potential witnesses and didn't find it improper. Was it witness interviews? There is nothing in the record that shows what was said, but they were witnesses and they were just being asked ordinary questions. Nothing terrible. And this whole business about the infringement contention, the infringement contention never changed. The pipe, first of all, they also said we provided no evidence of the pipe without the ball and spring. We showed a clear chain of custody starting with testimony about ordering the pipe, going to testimony respecting receiving it, respecting how the packages were handled, how they were sent to Mr. Lee, how Mr. Lee picked them up and how Mr. Lee brought them into evidence. So it's a clear chain of custody showing that the products came from the appellant. And this business about the infringement contention, the products are identical. The infringement contention has always been that this product infringes. And the physician has always been adding the indexing mechanism. The products are not identical. I'm holding them in my hand. One of them has multiple holes. One of them has a single hole. Couldn't that make a difference in the weight of the products? These are the ones you told me were given to the jury. That's right, Your Honor. The second hole is for the indexing mechanism. Right. And given the relatively small weight disparity between the products, couldn't that second hole, i.e. the removal of matter in one versus the other, have made a difference? Yes. It would obviously make it lighter. And it would be up to jury to take those things and hold them in their hands and see that one is clearly heavier than the other. Remind me, not what percentage was the difference, but what was the actual weight difference between the two? I don't know, Your Honor. I believe it was minuscule, so I want to know what it was. Right. I believe the total weight was on the order of about 45 grams and the difference was on the order of about 15. 15 grams. So do you think the jury holding these could really decide which one was lighter and heavier? I sure can't as I hold them. If you hold them in two hands, that may be different. If you put them in the same hand, you'll just go like that. No, not two hands. Individually. I can do it. I don't know. Maybe Judge Dyke is a better juggler than I am. I guess I'd like to return you to the argument that I believe Judge Dyke began with, which is why is the argument that the second pipe, the one that wasn't weighed, why is the argument that in that case the turret wasn't heavy enough to cause it to remain stationary objectively unreasonable? Because that's the standard that you have to meet to satisfy your willfulness verdict. That their arguments were objectively unreasonable. So why is that argument that they made objectively unreasonable? Well, the jury could take the pipe and they could look at it and they could see they're virtually the same and make a conclusion that one would operate the same way as the other. That's a jury finding. That's a jury determination. It's a factual determination. How does that make it objectively unreasonable? I'm missing the fine point of your question. I think the jury's conclusion was a reasonable one. The premise of the question is that the jury determination was reasonable. But why does that make their continuing to defend themselves and to argue to the contrary unreasonable? I thought you were agreeing earlier that it was not unreasonable for them to argue that the requirements for infringement were not satisfied. And in order to get exceptional case, you have to show that the argument was unreasonable. It's not sufficient to say, well, the jury was reasonable in reaching the contrary conclusion. I think if you look at the parts and you see how identical they are, down to very, very fine details, and if you think about what's going on just from ordinary experience, you would know that if you think about something really heavy on your table and you push it and it's kind of hard to move, and then think about a piece of styrofoam on the table and you push it, it's kind of real easy to move. I think the jury had plenty of evidence. That's not the question. Okay, but the differences are so fine. That's exactly why it is objectively reasonable for them to make the argument, because the differences are so fine. What I'm saying is the differences between the pipe with the extra hole in it for the bearing and the pipe without the extra hole for the ball and spring are so fine that to argue that it's going to make a difference in terms of the operation. You know, it's not a piece of styrofoam and a piece of lead, which would make a difference. That's obvious. Okay, can I ask you a question factually? So the fact that willfulness was found resulted in the judge modifying the damage award to 1.75 times the jury verdict, right? So the penalty was three-quarters more than what the jury awarded. Is that right? That's correct, Your Honor. There was also a finding of attorney's fees in this case. Was that finding of attorney's fees predicated on the willfulness? The finding of attorney's fees was predicated primarily on the repeated motion practice and the overall circumstances. But wasn't it also in part predicated on willfulness? I believe it was, Your Honor. I believe the judge looked at everything and made a judgment there. So if we reverse on willfulness, you lose the extra money in the damage award, and we'd at a minimum have to vacate and remand on the attorney's fees, because I understand the judge did also predicate the attorney's fee award on litigation misconduct. And that can be an independent basis, right? Yes, Your Honor. But can we be sure from this record upon which of those two bases he made a decision? I believe the judge was looking at the overall situation, Your Honor. I think what this court can do is look at the nature of litigation misconduct and really affirm on the basis that, you know. And factually, am I correct that the attorney's fee award is $231,000, but the actual damage award was only $70,000? Is that right? The damage award was $40,000 increased to $70,000. Increased to $70,000, okay. So if we were to reverse the willfulness finding, are you suggesting that he might have awarded a lower amount of attorney's fees based on the misconduct? I don't think so. I think he was looking at the actual time that was spent on the case, and he accepted all of it that he thought was appropriate to the case. And he did reduce one of the attorney's hourly rates, and did remove parts of the attorney's fees that related to other claims. But attorney's fee awards are discretionary. Yes. And so if he were to say, well, you know, this is a case where there's litigation misconduct and willfulness, and boy, when I put the two of them together, it makes me want to give over attorney's fees. Right. But maybe, I hate to say it, but if you lose on willfulness here, don't we have to send it back to him and say, would you do the same thing on attorney's fees since it is discretionary? Even if you were wrong on willfulness, you're a district court judge, would you still say litigation misconduct standing alone is a sufficient basis for the award you made? Well, I think it is standing alone. I think the willfulness... Well, you can think it is. But we've got to review his decision, which was discretionary. And if he mentioned willfulness as one of the bases, and if that was incorrect, don't we have to send it back to him and have him reconsider it? Yes, Your Honor, I believe you do. But I think, let's not lose sight of the fact that the willfulness was not supported merely by one factor. I think the fact that Mr. Chander had received actual notice of the patent, and his testimony about that... Yes, but that's a separate... There are two prongs of willfulness, correct? One of them is the defense of the litigation has to be objectively unreasonable. That's correct. And that's a whole independent prong, and if you fail to meet that, all of the subjective reasons don't matter, because you've got to satisfy both prongs. Right. And I think where the products are very literal copies of each other, and the differences are as fine as they are here, I don't think there was an objective likelihood of non-infringement. I mean, the test is it's an objective likelihood that these products infringed. And I think when you copy something down to the finest detail, and you copy all the advantages of the invention, and again, one final point, the heavy turret and the light manifold. How did this language come about? When you hold this pipe, if you make it all out of aluminum, it's nice and light and it's great, but it will get hot and it will burn you, and it will taste bad. If you make it all out of brass, it will not get hot, it will not burn you, it will taste good, but it will be heavy. The essence of what's going on here is the idea of moving, doing the turret in the brass, because it absorbs the heat, keeping the bottom light so that overall the thing is light, and the pipe does everything. And the arguments made by the appellant try to say, well, weight differential doesn't mean anything, the weight of the manifold doesn't affect anything, and they missed the point. He looked at the difference in weight, and maybe it wasn't the most elegant thing. If I wrote the claim, I might have said, the turret was made out of a material which absorbed heat, and the manifold was made out of something that was light. But he didn't do it that way. He was thinking, the inventor, oh, the turret is heavy, the aluminum is light, maybe a little simple-minded approach, but that's what he wrote in his claim, and that's what was in print. I think we're out of time. Thank you very much. Mr. Turan, you have two minutes. Mr. Turan, I'm quite concerned with the Court's findings of litigation misconduct in the decision, and particularly with what Mr. Handel discussed about threats to report counsel to the State Bars of California and New York. The Court, in its decision, pointed out, Mr. Handel couldn't point to exactly what he said, but the Court says that apparently you particularly said that you would gather declarations from customers to prove improper conduct. And the Court then notes, defendants have not produced any such declarations to this Court. It appears, therefore, that they did not follow through on their threat, or if they did so, they were unsuccessful in obtaining evidence to support that claim to intimidation. Tell me about that. That entire situation resulted from phone calls that I had received from my client, as a result of phone calls that they had received from a number of their customers, indicating that they were receiving calls from an East Council with threats of litigation. That was the language that was given to me by my client from their clients. Threats of litigation, such things as... And that would have been reduced, you said, to affidavits and placed in the record. That is correct. So then I communicated with East Council via email, and I said, I received this information. It is troublesome to me. Let's talk about it over the phone. And then we had a discussion, and at that time, he had agreed to back off and not do that again unless it was formally with the court reporter and on letter. And so then I said, OK, well, fine, then we'll just leave it at that and it's over with. And so we never pursued with declarations and affidavits. We just let it go at that point. That's squarely contrary to what the court said. Did the court get it wrong? No, I think the court was quoting an email that I had sent to counsel at that time, making that... Did you present to the court the situation that you now allege that circumstances had changed, and that's why you didn't gather those? Yes. Where is that presentation in the record? It was in oral arguments for the motion for attorney's fees, and I don't believe that was included in the record for some reason. Apparently the court didn't believe that. Well, not only that, the court actually said, defendants stated in their notice they would gather declarations from their customers to prove the improper conduct. However, defendants never produced any such declarations to this court. So it's not that it wasn't in the record somehow. You never got the evidence and even attempted to admit it after claiming to the judge that it existed. No, no, I don't think the judge was claiming a representation that I made to the court. I think the judge was quoting an email that I had sent Lee's counsel, indicating as such that if I needed to pursue this further, I would follow that course of action. But we never did, because at that point we had agreed that he wouldn't pursue that anymore, and it would be more formal than just phone calls to my client's customers. So I think that's what the court was quoting, the representation that I made in an email to Lee's counsel. But there are also a couple of things that we didn't discuss here, I wish we had, was real issues with the validity of the patent with regard to best mode and enablement, and especially the statutory bar for public use, because those were issues that were included in the briefs, but were not discussed. I believe I'm out of time. Yeah, I think we'll have to leave that to Lee. Thank you, Mr. Cram. Thanks to both counsel, the case is submitted. And that concludes our session for today. All rise. The hearing is adjourned until tomorrow morning at 2 a.m.